EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION,
Plaintiff–Appellant,

v.

PENTON INDUSTRIAL PUBLISHING
COMPANY, INC., Defendant–Appellee.

No. 87–3142.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 12, 1988.

Decided July 13, 1988.

Robert S. Bauders, Lawrence Mays, Pe-
ter S. Levine, E.E.O.C., Cleveland, Ohio,
Susan Elizabeth Rees, E.E.O.C., Washing-
ton, D.C., Jeffrey C. Bannon (argued), for
plaintiff-appellant.

Maria J. Codinach, Squire, Sanders &
Dempsey, Cleveland, Ohio, Maria J. Codi-
nach, Ronald J. James (argued), for defend-
ant-appellee.

Before: ENGEL, Chief Judge,*
KENNEDY and KRUPANSKY, Circuit
Judges.

KRUPANSKY, Circuit Judge.

The Equal Employment Opportunity
Commission (EEOC), the plaintiff-appellant
in this action,[1] has appealed from the dis-
trict court's dismissal of two counts of
equal pay sex discrimination against Pen-
ton Industrial Publishing Company, the de-
fendant-appellant (defendant).  The district
court concluded that the claims initiated
pursuant to Title VII of the Civil Rights
Act of 1964, Section 703(a)(2), 42 U.S.C.A.
§ 2000e–2(a)(2), (West 1986), and the Equal
Pay Act of 1963, 29 U.S.C.A. § 206 (d)
(West 1986), were barred by statutes of
limitations.

The underlying cause of action arose
from the following facts.  The defendant
publishes a monthly trade magazine called
"Modern Office Procedures" (MOP), which
deals with office products and practices.
The writing staff of MOP was composed of
various editors structured into a table of
organization ranking from the assistant ed-
itors, associate editors, technical editors,
senior editors, up to an executive editor.

A new employee who possessed little or
no writing experience, or comparable prac-
tical experience in office management, was

---

* The Honorable Albert J. Engel assumed the
duties of Chief Judge effective April 1, 1988.

1. Although the EEOC is the named plaintiff in
this case, it initiated this action on behalf of
Debra Haskell (Haskell) and Victoria Jackson

(Jackson), claiming that their former employer,
Penton Industrial Publishing Company ("de-
fendant"), had discriminated against them in
the payment of wages, based upon their sex.

employed as an assistant editor. Promotion considerations to the next job assignment level were predicated upon a demonstrated capability to perform the assigned duties of the position and an ability to assume the additional responsibilities of the next level of job classification. The duties of an associate editor were similar to those of an assistant editor, but also included the added responsibility to conduct specialized research for editorial projects. The duties of a senior editor, in addition to those performed by an associate editor, entailed certain managerial responsibilities including copy quality control and oversight of editorial style. Overseeing these editorial classifications was the Executive Editor, John Dykeman (Dykeman), and the Publishing Vice–President of the company, John Whaley (Whaley).

The two women who form the focus of this action initially were employed by the defendant as assistant editors because they had no previous writing or management experience. Victoria Jackson (Jackson) and Debra Haskell (Haskell) entered their employment as assistant editors on September 12, 1977 and November 17, 1977, at monthly salaries of $900 and $700 respectively. Jackson was promoted to the position of associate editor on November 17, 1978 at a monthly salary of $1000. Haskell was similarly promoted on November 23, 1979 at a monthly salary of $914.

On August 29, 1979, the defendant engaged the services of Keith Richards (Richards) as an associate editor at a monthly salary of $1625. From the commencement of his employment and continuing throughout the period of his tenure with the defendant, his monthly salary was greater than any of the female editors of the same or higher rank.

On February 1, 1980, Jackson was promoted to the position of senior editor at a monthly salary of $1333. Jackson was Richards' supervisor, and her duties included editing his work. Even though senior editors normally were in a higher salary range than associate editors, at the time of her promotion, Jackson was earning $1333 per month as compared to Richards' monthly salary of $1735.

Both Jackson and Haskell testified before the EEOC that they were aware of this salary disparity at the time, however, the testimony was in conflict as to whether either Jackson or Haskell actually complained about the wage disparity to their supervisors. Both Haskell and Jackson received salary increases effective on January 1, 1981, but were nevertheless at a lower pay scale when Richards was terminated on January 9, 1981 because of his failure to meet his writing deadlines.[2]

After Richards had been terminated, no male employee was paid more than a female editor of equal or higher classification. Haskell was terminated on April 2, 1982 for "excessive inter-office visiting." Her monthly salary at the time of her termination was $1470. Jackson resigned voluntarily on November 30, 1982, at which time she was earning $1657 per month. Thus, at the time they left defendant's employment, neither Haskell nor Jackson were earning the $1735 per month that Richards had earned before he was terminated in 1981.

Haskell filed a charge of sex discrimination with the EEOC on April 30, 1982, twenty-eight days after Haskell was terminated by the defendant, but more than one year after Richards had been terminated. After investigating the charges, the EEOC filed a lawsuit against the defendant on March 16, 1984 in federal district court, alleging discrimination under Title VII of the Civil Rights Act of 1964,[3] and the Equal

---

2. The EEOC alleged that the salary increases granted to Haskell and Jackson on January 1, 1981 were the result of complaints stemming from the salary disparities. The defendant contended that these were normal merit raises, and were unrelated to any complaints concerning Richards' salary. However, all parties agree that Haskell and Jackson earned a lower month-

ly salary than did Richards during the entire period of Richards' employment.

3. Title VII prohibits discrimination based upon the sex of an employee. The statute states, in pertinent part, that it shall be an illegal employment practice for any employer

   (2) to limit, segregate, or classify his employees ... in any way which would deprive or

Pay Act of 1963.[4] This action was commenced less than two years after Haskell's termination, but more than three years after Richards had been discharged. The complaint requested injunctive relief, back wages and liquidated damages for both Haskell and Jackson.

On January 13, 1986, the parties filed cross motions for summary judgment. The plaintiff's motion, which addressed the merits of the claims, was denied by the district court on December 15, 1986 and is not before this court on appeal. The defendant's motion for summary judgment was predicated upon the failure of the parties to have timely filed their respective actions within the appropriate statutes of limitations: specifically, with regard to the Title VII claim, the failure of either Haskell or Jackson to have filed a discrimination charge against the defendant with the EEOC within 300 days of the allegedly discriminatory act;[5] and the failure of the EEOC to have filed a claim under the Equal Pay Act within three years after the accrual of a willful violation of the Equal Pay Act.[6]

The EEOC responded to the defendant's motion for summary judgment by charging that the alleged discrimination constituted a continuing violation, which was timely filed within both statutes of limitations. The district court rejected this theory of a continuing violation and granted summary judgment for the defendant.

The EEOC has urged upon appellate review that the alleged discrimination continued after the termination of Richards, even though no other similarly situated male editor thereafter earned more than a female editor. The EEOC rationalized that the defendant's failure to pay female editors in the employ of the defendant subsequent to the termination of Richards the same monthly salary which Richards *had previously* earned amounted to an independent cause of action which accrued at the end of each pay period, and that the violation was, accordingly, continuing in nature. The EEOC argued that the appropriate statutes of limitations commenced to accrue with the last paycheck received by Haskell and Jackson, rather than at the time of Richards' termination from employment.[7] This argument misconstrues the meaning of a "continuing violation" under Title VII and the Equal Pay Act.

The Supreme Court has indicated that the statutes of limitations for actions predicated upon employment discrimination are triggered at the time when the alleged discriminatory act occurred, and not at the time when the last discriminatory effects have been manifested. *See Delaware State College v. Ricks*, 449 U.S. 250, 258,

---

tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's sex....
Section 703(a)(2) of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e–2(a)(2) (West 1986).

4. The Equal Pay Act similarly prohibits employment discrimination based upon sex. In particular, the Equal Pay Act provides that it is illegal to discriminate
between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which [they] pay wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....
Equal Pay Act of 1963, 29 U.S.C.A. § 206(d) (West 1986).

5. In order to bring a suit under Title VII in a "deferral state," the aggrieved party must have filed a charge of discrimination with the EEOC

within 300 days of the alleged discriminatory act. *See* 42 U.S.C.A. § 2000e–5(e) (West 1986). Ohio is such a deferral state. *Hall v. Ledex, Inc.,* 669 F.2d 397, 398 (6th Cir.1982).

6. The district court assumed for purposes of the defendant's motion for summary judgment that the three year statute of limitations for willful violations of the Equal Pay Act applied in the present case. *See* Equal Pay Act of 1963, 29 U.S.C.A. § 255(a) (West 1986) (incorporating by reference the statute of limitations of the Fair Labor Standards Act of 1938, as amended by Section 6(a) of the Portal to Portal Act of 1947).

7. This theory of a "continuing violation" is applied by the EEOC in this case equally to its Title VII and Equal Pay Act claims. *See Odomes v. Nucare, Inc.,* 653 F.2d 246, 250 (6th Cir.1981); *Orr v. Frank R. MacNeill & Son,* 511 F.2d 166, 170–71 (5th Cir.1975), *cert. denied,* 423 U.S. 865, 96 S.Ct. 125, 46 L.Ed.2d 94 (1975).

101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *United Airlines, Inc. v. Evans,* 431 U.S. 553, 557, 97 S.Ct. 1885, 1887, 52 L.Ed.2d 571 (1977). The courts have recognized only two narrowly limited exceptions of "continuing violations" which would toll the running of a statute of limitations under Title VII or the Equal Pay Act.

The first category arises where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation, i.e., where an employer continues to presently impose disparate work assignment or pay rates between similarly situated employee groups. *See, e.g., Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir.1982) (different and more burdensome workload given to female than to male which continued after the original discriminatory act); *Hall v. Ledex, Inc.,* 669 F.2d 397, 398 (6th Cir.1982) (additional and more burdensome duties assigned to female within the statute of limitations) (alternative holding); *Roberts v. North American Rockwell Corp.,* 650 F.2d 823, 827 (6th Cir.1981) (discriminatory acts occurred within the statute of limitations) (alternative holding); *accord Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971 (5th Cir.1983) (different and more burdensome duties continued during the statute of limitations period); *Jenkins v. The Home Insurance Co.,* 635 F.2d 310 (4th Cir.1980) (continuing inequality of pay); *Satz v. ITT Financial Corp.,* 619 F.2d 738 (8th Cir. 1980) (continuing differences in pay between the sexes); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C.Cir.1976) (continuing differences in pay), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed. 2d 792 (1978). The Supreme Court has recognized the existence of a "continuing violation" in only one instance in which the Court specifically noted that there was a *current* and *continuing* differential between the wages earned by black workers and those earned by white workers. *See Bazemore v. Friday,* 478 U.S. 385, 394–95, 106 S.Ct. 3000, 3006, 92 L.Ed.2d 315 (1986).

The second category of "continuing violations" arises where there has been a long-standing and demonstrable policy of discrimination, such as an established and repeated pattern of paying men more than women. *See, e.g., Janikowski v. Bendix Corp.,* 823 F.2d 945, 948 (6th Cir.1987) ("over-arching policy of discrimination"); *Roberts,* 650 F.2d at 827 (established policy of not hiring women) (alternative holding); *accord Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); *Stewart v. CPC Int'l, Inc.,* 679 F.2d 117, 120 (7th Cir.1982); *Jewett v. ITT Corp.,* 653 F.2d 89, 91–92 (3rd Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981); *Milton v. Weinberger,* 645 F.2d 1070 (D.C.Cir.1981). To constitute such an established pattern, the plaintiff must clearly demonstrate some "over-arching policy of discrimination," and not merely the occurrence of an isolated incident of discrimination. *Janikowski v. Bendix Corp.,* 823 F.2d 945, 948 (6th Cir. 1987)

> To prevail on a continuing violation theory, however, the plaintiff must show more than the occurrence of isolated or sporadic acts of intentional discrimination. The preponderance of the evidence must establish that some form of intentional discrimination against the class of which plaintiff was a member was the company's "standing operating procedure."

*Jewett,* 653 F.2d at 91–92; *accord Delaware State College,* 449 U.S. at 257, 101 S.Ct. at 504 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."); *United Air Lines, Inc.,* 431 U.S. at 558, 97 S.Ct. at 1889 ("[T]he emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists.") (emphasis in original).

In the instant case, the EEOC has alleged nothing more than a single isolated incident where a male employee was paid more than similarly situated female employees. Once Richards' employment had been terminated, no male employee was thereafter paid more than a similarly situated female employee. Accordingly, the plaintiff in this case has failed to demon-

strate any present disparity in wages or in working conditions, nor has it demonstrated an "over-arching policy of discrimination" which might constitute a "continuing violation" under either Title VII or the Equal Pay Act.

The EEOC has urged this court to recognize a third category of "continuing violations" in cases where a currently employed female is compensated at a different wage than had been previously paid to an employed male in a similarly situated position, even if a disparity in wages no longer continued to exist.[8] Taken to its logical conclusion, such a theory would preclude an employer, from reducing a wage scale assigned to a given job classification for economic or other valid considerations and thereafter making the position available to an individual of the opposite sex at a reduced salary from that of the previous employee who had filled the job slot. According to the analysis advanced by the EEOC, an employer's economic decision to reduce wages for a particular job classification would constitute a continuing violation for purposes of the statutes of limitation so long as some employee was being paid less than any previous employee of the opposite sex had ever earned. Under this interpretation, an employer would be able to offer such a position to a female applicant only at the previous salary paid to the male employee, in essence creating a vested wage rate. Paradoxically, an employer's efforts to avoid committing a continuing violation under the EEOC's argument by offering the position at the reduced level of compensation to a male applicant would place the employer at risk of liability for sex discrimination in terms of restrictive hiring practices.

This theory would lead to anomalous results and would have the effect of reducing the statutes of limitations in employment discrimination cases to a nullity. *See, e.g., Abrams v. Baylor College of Medicine,* 805 F.2d 528, 533–34 (5th Cir.1986) (Such an interpretation "would expose employers to a virtually open-ended period of liability and would ... read the statute of limitations right out of existence."); *accord Lorance v. AT & T Technologies,* 827 F.2d 163 (7th Cir.1987). This court declines to recognize such an exception to the statutes of limitations for Title VII and Equal Pay Act claims.

Accordingly, the decision of the district court granting summary judgment for the defendant is AFFIRMED.

---

**8.** In support of this argument, the EEOC has cited to a number of its interpretative regulations directed to situations where an employee was paid at a different wage rate than was a previous or subsequent employee of the opposite sex. *See* 29 C.F.R. §§ 1620.13(b)(2)–(5) (1987). These regulations, however, deal with instances where there was no similarly situated employee of the opposite sex working at the time of the alleged violation, and have been limited in their application to cases where the aggrieved party who initiated the discrimination charge was either the predecessor or successor of the more highly paid employee. *See Clymore*

*v. Far–Mar–Co.,* 709 F.2d 499, 501–02 (8th Cir. 1983); *Bartelt v. Berlitz School of Languages,* 698 F.2d 1003, 1005 n. 1 (9th Cir.), *cert. denied,* 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983); cf. *Hodgson v. Behrens Drug,* 475 F.2d 1041, 1049 & n. 11 (5th Cir.1973) (also involved current wage disparities). In the instant case, there were similarly situated employees of the opposite sex working at the time that Richards was employed, and neither Haskell nor Jackson was the predecessor or successor of Richards. Thus, the interpretative regulations in question are not directly applicable to this appeal.