**Rosemarie GANDY, Plaintiff–Appellee,**

v.

**SULLIVAN COUNTY, TENNESSEE, and William John McKamey, Defendants–Appellants.**

No. 92–6700.

United States Court of Appeals, Sixth Circuit.

Argued March 4, 1994.

Decided May 24, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied July 7, 1994.

Donald F. Mason, Jr. (argued and briefed), D. Bruce Shine (briefed), Kingsport, TN, for plaintiff-appellee.

Mark S. Dessauer (argued and briefed), Hunter, Smith & Davis, Charlton R. De-Vault, Jr., Kingsport, TN, John S. McLellan, III, Blountville, TN, for defendants-appellants.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MERRITT, Chief Judge.

Defendants, Sullivan County, Tennessee and William John McKamey appeal a verdict and award of damages to plaintiff Rosemarie Gandy under the Equal Pay Act provisions of the Fair Labor Standards Act, 29 U.S.C. § 206(d)(1). Defendants make three assignments of error. The issue that has created the most confusion, which we address in Part II of this opinion, is defendants' assertion that the statute of limitations barred this action and plaintiff's assertion that the action is covered by the "continuing violations" doctrine. Defendants also make a sufficiency of the evidence claim. They contend that there was not ample evidence upon which a jury could make the necessary finding that a substantial similarity between Gandy's job and the job of her male predecessor existed. Finally, defendants assert that the district court prejudiced the substantial rights of the defendants by comments which exemplified the court's lack of preparation and knowledge of the law in this area. We find no error in the district court's judgment and therefore affirm, 819 F.Supp. 726.

## I.

Rosemarie Gandy began employment with Sullivan County in 1978 as a clerk in the Department of Accounts and Budgets. From 1979 to June 30, 1982, she was a Claims Representative in the County's Safety and Insurance Department. From July 1, 1982 through the date of trial in this case, Gandy held the position of "Safety Director" for the County. For approximately 18 months before Gandy became Safety Director, the County employed Steven Lawson as "Assistant Safety Director and Communi-

ty Development Project Coordinator." Gandy was given the job of Safety Director when Lawson was promoted to Risk Manager.

Under the salary scheme adopted by the County, positions are allocated an alphabetical classification from "A" through "P," with "A" being the lowest paid and "P" being the highest paid. Within each classification, seniority is also recognized through incremental pay raises awarded during the first nine years of service. The County designated Gandy's position as Safety Director as a wage classification "E." In 1984, she was advanced to classification "F" where she remained permanently. During his time as the Assistant Safety Director, Lawson's wage classification was "K;" that classification was raised to "M" upon his promotion to Risk Manager.

When Gandy became Safety Director, Lawson told her that she would receive an "E" classification and be assigned additional responsibilities. He further told her that if she performed the additional duties well, she would be moved into the "K" classification. Beginning in 1983, Lawson actively attempted to have Gandy moved to classification "K." He wrote at least five letters to the County Executive, explaining that Gandy was being underpaid, detailing her abilities and the appropriateness of increasing her salary, and describing the job as being traditionally compensated at level "K." His requests were continually denied. The record reflects that Gandy knew of Lawson's attempts to have her salary increased and made attempts of her own to have her pay increased.

On September 16, 1991, Gandy filed suit against Sullivan County, alleging a willful violation of the Equal Pay Act. She sought backpay for the wage differential between her successor (Lawson) and the wages paid to her from July 1, 1982 forward, and more specifically for the three year period prior to commencement of the suit. After trial before a jury, a verdict was returned for the

plaintiff. The jury concluded that Gandy's position as Safety Director and Lawson's former position were essentially equal work, that Gandy was entitled to recover damages from the defendants for unequal pay, and that the defendants' conduct had been willful. Pursuant to a subsequent order of the district court, Gandy was awarded $64,959.80 in compensatory and liquidated damages, attorney fees and costs. Defendants now appeal.

## II.

The first issue raised on appeal is whether this action was barred by the statute of limitations. Claims arising under the Equal Pay Act must be filed within three years of the accrual of the cause of action, and plaintiffs may recover for unpaid wages for up to three years prior to the filing of the action when the employer's violation of the Act is found to be willful. 29 U.S.C. § 255(a); *Anderson v. City of Bristol, Tennessee,* 6 F.3d 1168, 1174 (6th Cir.1993); *Miller v. Beneficial Management Corp.,* 977 F.2d 834, 842 (3d Cir.1992). Gandy alleged, and the jury found, willful violations by the defendant. The defendant contends that the three year limitations period began to run, at the latest, in 1983 when Gandy knew she was being compensated at a rate less than her male predecessor. The defendant concludes that the entire action, filed in 1991, is time-barred.

The district court ruled that the statute of limitations did not bar this action. The court found that Lawson was Gandy's predecessor in the job of Safety Director, that Lawson was paid at a higher rate than Gandy, and that there was no other similarly situated male employee working during the time of the alleged violations. The court, citing *E.E.O.C. v. Penton Inds. Pub. Co., Inc.,* 851 F.2d 835 (6th Cir.1988) and an EEOC interpretive regulation,[1] held that in predecessor/successor equal pay cases such as this, a "continuing violation" is established and the

---

1. The regulation states:

    It is immaterial that a member of the higher paid sex ceased to be employed prior to the period covered by the applicable statute of limitations period for filing a timely suit under the EPA. The employer's continued failure to pay the member of the lower paid sex the wage rate paid to the higher paid predecessor constitutes a prima facie continuing violation. Also, it is no defense that the unequal payments began prior to the statutory period. 29 C.F.R. § 1620.13(b)(5).

action is not time-barred. *Gandy v. Sullivan County, Tennessee,* 819 F.Supp. 726, 727 (E.D.Tenn.1993). We agree that the statute of limitations had not expired.

■ The Equal Pay Act is violated each time an employer presents an "unequal" paycheck to an employee for equal work. *Hall v. Ledex, Inc.,* 669 F.2d 397, 398 (6th Cir. 1982) (citations omitted). In *Hall,* the plaintiff was promoted to her former male supervisor's job, and although given a new title, her new job duties were identical to that of the male predecessor. When the job was retitled and given to plaintiff, the employer decreased the salary by two-thirds. In ruling on a statute of limitations argument by the defendant, we ruled that the defendant had violated the Equal Pay Act each time it presented plaintiff with a paycheck. *Id.*

■ Under the Equal Pay Act, a plaintiff's action will not be time-barred as long as at least one forbidden discriminatory act occurs within the relevant limitations period. It is irrelevant that the employer has committed identical illegal acts prior to the limitations period. *Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991). To hold otherwise would grant license to employers to discriminate perpetually as long as they have been doing so unchecked for at least three years. *See Miller,* 977 F.2d at 843 (citing *Hodgson v. Behrens Drug. Co.,* 475 F.2d 1041, 1050 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973)). In this case, Gandy's rights under the Equal Pay Act were violated with every check she received after she replaced Lawson in 1982. Thus, the court properly found that she had a timely cause of action for the violations occurring between 1988 and 1991, the three years immediately prior to filing the action, and that she could properly collect damages for that period.

■ The plaintiff has argued, and the district court found, that this action was timely based on a theory of "continuing violations" in employment discrimination. The doctrine of continuing violations is a judicially-created one which has been used in two ways: It may provide a court with "jurisdiction" over a cause of action which was filed after the limitations period had run on a discrete discriminatory act triggering the statute. The doctrine also may allow a court to impose liability on an employer for acts committed outside the limitations period. In this case, however, neither issue presents itself: discriminatory acts were committed within the limitations period, and Gandy did not request damages for conduct outside the limitations period.

While repeated denials of equal pay such as this are "continuing in nature," *see Hall,* 669 F.2d at 398, the legal theory of continuing violations is not really applicable here. "Continuing" wrongs have been described in four categories relative to limitations of actions:

(1) the period limiting actions to recover for *all* harm may commence upon the occurrence of the first invasion of the plaintiff's rights; (2) *each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with its occurrence;* (3) the period for all harm may not commence until the defendant ceases his wrongful conduct; and (4) the period for all harm may be postponed until there is a manifestation of compensable harm.

*Developments in the Law, Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1205 (1950) (emphasis added). The Sixth Circuit, like most other courts, classifies Equal Pay Act claims in the second category: each check paid at the discriminatory rate is a denial of equal pay and a separate violation of the Act. A separate cause of action accrues for each violation and must be filed within the three-year time period beginning with its occurrence. Although "continuing in nature," invocation of the continuing violations doctrine is not necessary since plaintiffs like Gandy are not attempting to file an otherwise untimely action and are not attempting collection of damages for conduct outside the limitations period.

Analyzing continuing wrongs in this manner is not unique to the employment or equal pay context. In *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), the Su-

preme Court discussed the concept in the anti-trust context. Hanover filed an antitrust action in 1955 alleging that the defendant's restrictive system of distributing machinery violated the antitrust laws. The defendant raised a statute of limitations defense, asserting that it had applied the challenged policy to Hanover since 1912. The Supreme Court ruled that Hanover could sue but that it could recover only those damages suffered within the limitations period, explaining that a new cause of action accrued each time the defendant violated the law. The Court reasoned that the defendant should not be allowed to continue its illegal conduct forever because it had not been previously challenged and that plaintiff should not be able to collect for forty years of damages.

Similarly, the defendant in this case violated the Equal Pay Act for almost ten years before Gandy sued. The defendant should not be allowed to continue to discriminate because it has been able to do so for ten years, and the plaintiff should not be allowed to collect for damages outside the three-year limitations period.

Application of the continuing violations doctrine was discussed at some length in *E.E.O.C. v. Penton*, 851 F.2d 835 (6th Cir. 1988), and the parties and the district court have attempted to rely on or distinguish the case as necessary. *Penton* addressed the class of cases in which the employment of a similarly-situated male co-worker who was being paid at a higher rate than a female coworker, terminates. *Penton* found that the termination effectively eliminates the discrimination, even though the female employee continues to be paid the lower wage, because there is no longer a disparity in wage rates. The court found that the plaintiff had:

> alleged nothing more than a single isolated incident where a male employee was paid more than similarly situated female employee[ ]. Once [the male]'s employment had terminated, no male employee was thereafter paid more than a similarly situated female employee. Accordingly, the plaintiff ... has failed to demonstrate any present disparity in wages or in working conditions, nor has it demonstrated an "overarching policy of discrimination" which might constitute a "continuing violation" under either Title VII or the Equal Pay Act.

*Id.* at 838–39. Thus, *Penton* held that the termination tolled the statute of limitations and a plaintiffs' suit will be untimely unless it is filed within three years of the male co-worker's termination. *Id.* at 835–39.

Although the court in *Penton* does not suggest how the discrimination ceased since the female employees continued to be compensated at the discriminatory wage rate, the situation presented by this case is different and we therefore are not constrained by *Penton*. Unlike the similarly-situated male co-worker of *Penton*, this case presents the predecessor/successor question in which a female employee was always paid less than her male predecessor, a scenario *Penton* specifically declined to address. *Id.* at 839 n. 8. Each unequal paycheck to Gandy was a violation of the Equal Pay Act. The discrimination never "ceased," as it was found to in *Penton*, since every paycheck Gandy received was calculated at a discriminatory rate.

In sum, because each unequal paycheck is considered a separate violation of the Equal Pay Act, a cause of action may be brought for any or all violations occurring within the limitations period (three years) immediately prior to commencement of the action. *See also Miller v. Beneficial Management Corp.*, 977 F.2d 834, 843 (3d Cir.1992). Gandy's action was not time-barred, and we therefore affirm the district court's judgment.

## III.

■ Defendants contend that the evidence produced at trial was insufficient to sustain the verdict. Specifically, they argue that the district court erred in refusing to grant a directed verdict on the ground that there was not sufficient evidence of the required "substantial similarity" between Gandy's job and Lawson's job. When reviewing a motion for direct verdict, this Court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. Rather, we view the

evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences. *Lewis v. City of Irvine,* 899 F.2d 451, 454–55 (6th Cir.1990).

We find that there is sufficient evidence in the record that supports the jury's verdict, including a significant amount of testimony from Gandy and from Lawson describing the two jobs as requiring similar skills, letters written by Lawson requesting pay increases because of the similarity between the jobs, and Lawson's testimony that the jobs were in fact substantially similar. Defendants proffered the testimony of an expert, Mr. Richard Romich, who gave an opinion as to the similarities and differences in job content of the positions held by Gandy and Lawson. Romich testified that the level of skill, effort, responsibility and working conditions of Lawson's former position made it deserving of a higher pay classification than Gandy's work as Safety Director. In sum, Romich testified that the jobs were not substantially similar. On cross-examination, plaintiffs elicited testimony that Romich had never interviewed or consulted with Gandy relative to her job duties, but rather had spent approximately 75 minutes consulting with Lawson over the telephone. While defendants place considerable emphasis on the testimony of their expert witness, the jury did not have to accept his opinion given the other evidence in the record upon which it could base a contrary decision.

Viewing the evidence in the light most favorable to Gandy, defendants have failed to establish that the jury could not have found substantial similarity between the jobs in question. We therefore affirm the district court's decision denying defendant's motion for a directed verdict.

## IV.

■ Defendants' final assignment of error concerns comments made by the district court judge during the trial. First, the court commented on the nature of Gandy's cause of action, stating:

> Well, the issue is—was she discriminated against because she was a female, which is pretty broad—It's hard to, to exclude any-

thing, I mean, that—of how anything that related to her, I guess.

Defendants argue that the court was not familiar with the law and had not studied the technical aspects of this case prior to trial.

■ Second, during the trial, defendants were attempting to qualify Mr. Romich as an expert. Prior to his testimony, the court made the following comments:

> [I]t's for you to weigh what his qualifications and his abilities are to render an opinion because generally we don't let people state their opinions in court.... I'm just letting him testify for your use and benefit if you think its of any use and benefit to you; and that, the ultimate question will be were the jobs similar or the same or whatever the test was, and that's the only reason I'm letting the evidence in; and I'm charging you to weight in that regard....

With regard to this comment, Defendants argue that the court's comments "chilled any weight the jury may have given his qualifications or testimony." Based on these two comments, defendants argue that their substantial rights were prejudiced and that they are entitled to a new trial.

Rule 61 of the Federal Rules of Civil Procedure provides that any error committed by the trial judge is grounds for setting aside a verdict or granting a new trial if the error affects the substantial rights of the parties; otherwise, the error should be considered harmless. The claimed errors here do not rise above the level of harmless error. The initial comment by the court came early in the trial, and any error in the court's characterization of the law was clearly remedied by appropriate, thorough jury instructions which properly defined the cause of action and burdens of proof. The court also remedied any possible errors in its second statement through a jury charge explaining the role and weight of expert witness testimony. In sum, the two alleged errors were ameliorated by the jury charge at the close of the trial; they cannot be said to have affected the substantial rights of the defendants.

Accordingly, we **AFFIRM** the judgment of the district court in all respects.