David B. EVANS, Plaintiff,

v.

TOYS R US–OHIO, INC., et al., Defendants.

No. 5:98–CV–1305.

United States District Court, S.D. Ohio, Eastern Division.

Jan. 14, 1999.

Richard C. Haber, Reminger & Reminger, Cleveland, OH, for David B. Evans, plaintiff.

James R. Williams, Beth R. Meyers, Mindy S. Novick, Jackson, Lewis, Schnitzler & Krupman, New York, NY, Stephen S. Zashin, Zashin & Rich, Cleveland, OH, for Toy's R Us–Ohio, Inc., Toy's R US–Delaware, Inc., defendants.

## OPINION AND ORDER

GWIN, District Judge.

In this case, Plaintiff David B. Evans sues his employer, Defendants Toys "R" Us–Ohio, Inc. and Toys "R" Us–Delaware, Inc. (collectively "Toys R Us"), alleging unlawful race discrimination, retaliation, and violation of Ohio public policy.[1] Plaintiff Evans says despite his years of service and qualifications, Toys R Us has failed to promote him from a Store Manager position to an Assistant Store Director position.

On November 23, 1998, Defendants Toys R Us filed a motion for summary judgment seeking judgment on Plaintiff Evans' complaint [Doc. 17].[2] On December 17, 1998, Plaintiff Evans filed a motion to dismiss *without prejudice* his federal and state claims for retaliation (Counts III and IV) [Doc. 20].[3] Because Defendants Toys R Us oppose dismissing these claims without prejudice,[4] the Court decides both Plaintiff Evans' motion to dismiss, and Defendants Toys R Us' motion for summary judgment.[5]

For the reasons that follow, the Court grants Defendants Toys R Us' motion for summary judgment on Counts I, II and V of Plaintiff Evans' complaint. The Court also grants Plaintiff Evans' motion to dismiss Counts III and IV of the complaint without prejudice.

### I. Facts

Plaintiff David Evans brings claims against Defendants Toys R Us for failure to promote him from the position of Store Manager to Assistant Store Director. Evans says that despite his nine years of service with the company and strong performance evaluations, Toys R Us has passed him over for promotion. In particular, Plaintiff Evans suggests that one of his immediate supervisors, Ms. Debbie Walsh, has treated him poorly. Plaintiff Evans claims that Ms. Walsh's treatment of him, and the fact that he has not been promoted, is because of his race.

In response, Defendants Toys R Us say that although Plaintiff Evans' evaluations show good performance as a Manager, such reviews do not guarantee that Evans is quali-

1. Jurisdiction in this matter is premised upon diversity of citizenship under 28 U.S.C. § 1332. Plaintiff Evans is a resident of the State of Ohio, Defendants Toys R Us–Ohio, Inc. and Toys R Us–Delaware are Delaware corporations licensed to do business in Ohio. Plaintiff Evans also makes claims arising under federal law, specifically 42 U.S.C. §§ 1981 and 1981(a).

2. In his five-count complaint, Plaintiff Evans makes claim for race discrimination violating Ohio Rev.Code § 4112.99, et seq., and 42 U.S.C. § 1981 (Counts I and II); retaliation violating Ohio Rev.Code § 4112.02(I) and 42 U.S.C. § 1981 (Counts III and IV); and violation of Ohio public policy (Count V).

3. Plaintiff Evans' Motion to Dismiss Counts III and IV was accompanied by his Memorandum in Opposition to Defendant Toys "R" Us' motion for summary judgment [Doc. 21].

4. Defendants' Reply Brief in Support of Summary Judgment at 1, n. 1.

5. In his motion to dismiss his retaliation claims, Plaintiff Evans states that the "current state of evidence does not appear to substantiate these claims." See Doc. 20 at 1.

fied to be promoted to Assistant Store Director. Defendants also contend that Evans' overall performance ratings are limited to "meets expectations" and that none of his supervisors have rated him as "promotable."

Plaintiff Evans is an African–American male employed by Defendants Toys R Us as a store manager in the Chapel Hills/Cuyahoga Falls store, near Akron, Ohio. Plaintiff Evans was first hired by Toys R Us in September 1986, as a storeroom laborer. His principle duties included assembling merchandise and unloading trucks. In 1988, Plaintiff Evans was promoted to Department Head where he became responsible for shipping and receiving at the Rolling Acres store.

In 1990, based upon his performance and the recommendation of his direct supervisor at the time, Plaintiff Evans was accepted into Defendant Toys R Us' management-training program. After successfully completing the management-training program, Evans was promoted to Store Manager at a store in Canton, Ohio.[6]

Two years later, in 1992, Plaintiff Evans was transferred back to the Rolling Acres store in the capacity of Front End Manager. This was a lateral move within the company. By the end of 1993, Plaintiff Evans had been transferred to the position of 500's Manager at the Chapel Hill store.

Throughout his employment with Defendant Toys R Us, Plaintiff Evans was reviewed periodically for job performance. These reviews were typically conducted by immediate supervisors or managers on either a semi-annual or annual basis. Non-management employees appear to be reviewed more frequently, at least semi-annually, compared to management-level employees that apparently are reviewed annually.

Plaintiff Evans argues that his job performance evaluations show that he has historically and consistently met company expectations. Evans says these review are evidence that he is ready for promotion. Defendants Toys R Us suggest that consistently receiving "meets expectations" ratings does not guarantee promotion.

Plaintiff Evans performance reviews from the period he first started at Toys R Us in September 1986, through the period he was promoted to Store Manager in December 1990, show Evans' job performance "met expectations" or was "above expectations." For instance, an employee evaluation dated February 7, 1989, shows Plaintiff Evans met expectations in his position as Department Head of the storeroom. In certain categories, Evans was rated as performing "above expectation." Shortly after his promotion to Store Manager in December 1990, Plaintiff Evans' evaluation stated that "David has gone from a driven, self motivated trainee and has developed into a driven, self motivated manager." [7]

Later employee evaluations also show Plaintiff Evans' job performance continued to meet company expectations. In his evaluation of April 3, 1991, Evans' supervisor summarized Evans' performance: "David has done an excellent job in the storeroom, and is ready to move on to another area—front end. He has put forth a tremendous effort to learn new procedures & policies ... If he continues to put forth this effort & energy he will ensure his success as a manager."[8] Plaintiff Evans' performance evaluations for 1992 and 1993 also reflect overall job ratings of "meets expectation." [9] In April of 1994, Linda Channels, the Store Director of the Chapel Hills location, reviewed Evans. At that time, Ms. Channels rated Plaintiff Evans very well.[10] Ms. Channels projected that Evans would be promotable to the position of Assistant Store Director in one to two years.[11]

However, beginning in 1995, Plaintiff Evans suggests that his performance evaluations "inexplicably changed." Plaintiff Evans say this change does not accurately reflect his job performance, but rather is because of his race.

---

**6.** The position of Store Manager is the third level of supervision in a given store. Store Managers report to Assistant Store Directors, who in turn report to Store Directors.

**7.** Plaintiff's Exhibit 3 (Summary of Overall Performance).

**8.** Plaintiff's Exhibit 4 (Summary of Overall Performance).

**9.** *See generally* Plaintiff's Exhibits 4 & 5.

**10.** Plaintiff's Exhibit 9 at 3, 4, 8.

**11.** *Id.* at 17.

For instance, although his April 1995 evaluation stated that he met company expectations, his "growth potential" (previously rated by Ms. Channels as promotable within one to two years) was downgraded to "correctly placed in position." This was the first time an evaluation placed limits on Evans' upward growth in the company. Evans contends that this downgrade did not reflect the opinions of his direct supervisor at the time, Mr. Chris Elias. Evans suggests that Mr. Elias was instructed to change the evaluation by then District Manager, Mr. David Peachey. Plaintiff Evans says that after sitting in on Mr. Elias's evaluation of Evans, Mr. Peachy instructed Elias to rewrite the evaluation. Mr. Peachey could not recall the incident.[12]

In 1996, Plaintiff Evans says that matter worsened when a new Assistant Director, Ms. Debbie Walsh, was assigned to the Chapel Hill store. Evans says that Ms. Walsh was extremely critical of him. While Plaintiff Evans' evaluation dated February 1996, showed his overall performance as "meeting expectations," Ms. Walsh downgraded certain of his performance ratings to "below expectation" in areas Plaintiff Evans had previously received ratings of "above expectations." This included a "below expectation" rating for Supervisory Skills and Planning/Organization Skills. Ms. Walsh also suggested that Evans' be "laterally assigned to the position of 'Salesfloor Manager'" to enhance Evans' professional development.

On November 15, 1996, Ms. Walsh gave Evans his mid-year management review. Again, she rated Evans' overall performance as "meeting expectations." However, according to Ms. Walsh's review, Plaintiff Evans had experienced difficulty adjusting to the Salesfloor Manager position. Walsh therefore reassigned Evans to the Front–End Manager position where she reports that "he is proving to be effective." [13]

Shortly after this review, Evans wrote a letter to Toys R Us Human Resource Manager, Ms. Linda Klugh, complaining of Walsh's conduct and his November 15, 1996 mid-year evaluation. In his letter, dated November 16, 1996, Evans says that "Ms. Walsh has been very hostile in her treatment of me and will not listen or show any respect for my opinions regarding operations that could benefit the company." [14] Evans also writes: "In the recent past I have been contacted by Toys R Us employees about the treatment that Ms. Walsh has bestowed upon me. They have indicated to me that Ms. Walsh has disdain against minorities and men in particular." [15]

Plaintiff Evans complains that despite receiving the November 16, 1996 letter, Human Resource Manager Klugh failed to investigate or take action to remedy the situation with Ms. Walsh. In her deposition, Ms. Klugh describes her actions.[16] Despite Ms.

12. Plaintiff's Exhibit 28, David Peachey deposition at 43–44.

13. Plaintiff's Exhibit 15. In her review, Ms. Walsh makes some of the following comments, to which Plaintiff Evans objects:

Dave needs to continue to learn and apply new procedures as they become available; make extra efforts to learn procedures that are not Front–End related. Dave must make FOCUS issues a daily priority—shelf labels, top 100, bad maintenance issues must be followed up on . . . .
Id. (Category: Work to Improve/Developmental Opportunities for Remainder of Year).
Dave had great difficulty adjusting to the salesfloor and was not effective in accomplishing his or the stores goals. He is now back in the Front–End where he is proving to be effective.
Id. (Summary of Overall Year-To-Date Performance).
Dave needs to continue developing his knowledge of the salesfloor—this has seriously effected his ability to be a successful manager this year. . . .
Id. (Skill Factor: Organizational Knowledge (received "below expectation" rating)).
Dave has trouble meeting salesfloor deadlines. Had difficulty learning and implementing aisle work list. Over delegates task or delegates w/out proper follow up—resulting in tasks not being completed or redone, . . .
Id. (Skill Factor: Administrative Skills (received "below expectation" rating)).

14. Plaintiff's Exhibit 12 at 1.

15. Id. at 2.

16. Ms. Klugh testified as follows:

Q. Do you maintain notes of the results of any investigations that you do in the complaints by employees?
A. If they're like a sexual harassment complaint where there's an official investigation done, I keep those.

Klugh's testimony, Plaintiff Evans suggests that Defendants Toys R Us knew Ms. Walsh disliked minorities and men and knew that Walsh was treating Evans differently because of his race. For support, Evans shows a Counseling Review report detailing a reprimand Walsh received for inappropriate conduct regarding Evans.[17] Plaintiff Evans says this counseling report is strong evidence that Ms. Walsh was treating him differently than other employees.

On October 20, 1996, Human Resource Manager Klugh sent an e-mail to then District Manager, Steve Poinsett. The e-mail outlined the developments between Plaintiff Evans' and Debbie Walsh. The message stated, in part:

> I received his [David Evans] mid year review back today and attached was a 2 page letter that he carbon copied to his attorney. In this letter he makes some pretty strong accusations.... I also want to eliminate the line of thinking that he is being harassed because Debbie does not like minorities or men and that this is the result of his car accident.

> The largest concern I have is Debbie's mid year review. Some of the accusations that Dave has made in reference to his treatment are also outlined (verification) in Debbie's mid year review. This could put us in a sticky situation because we are documenting that Debbie does not treat the managers well. The only thing we will be able to focus on here is that Debbie treats everyone like that, not just minorities and men.[18]

Thereafter, on November 22, 1996, Ms. Klugh sent a letter to Mr. Richard Cudrin. In this letter, Klugh discusses the "Evans–E.E.O Complaint." She writes to Mr. Cudrin that Ms. Walsh's own personal mid-year review "may hurt us since it backs up some of Dave's Complaints." [19]

In 1997, Plaintiff Evans was not reviewed by Ms. Walsh, although she was still his direct supervisor. Instead, Plaintiff Evans was reviewed by Chapel Hill Store Director, Mr. Bruce Clark. In his review, Clark rated Evans' overall job performance as "meeting expectations." In certain areas, including "Leadership Skills" and "Communication Skills," Clark rated Plaintiff Evan's performance as "clearly outstanding." [20] However, like Mr. Elias' earlier evaluation of April 3, 1995, Clark rated Evans' "growth potential" as "correctly placed in present position." [21]

---

Q. How about racial harassment?
A. Well, I'd have to say no. David's is the only one I even looked into, and there was really nothing to investigate other than my documented letters back to David regarding my findings, or the counseling in Debbie's case. And I know that on at least one occasion I met with David and David Peachy, and on one occasion with David and Bob Bouzard to review findings of his complaints, and to get involved in how he could help manage the situation.
Q. So there were no notes kept of your investigation into David's complaints?
A. There was nothing to investigate. I mean, his complaints, any specific fact he gave me had nothing to do with racial motivation. His complaints about Debbie were concerns that other people in the store had as well. So I looked into it as a management issue, not a racial issue.
Q. Well, didn't David tell you that other store employees had told him that Debbie Walsh was a racist and didn't like blacks?
A. I don't recall him saying that.
Q. Had he told you that, would you have looked into that by interviewing other store employees?
A. Of course.
Q. If any employee gave you specific details as to comments that have been made to him about perceived racial discrimination, would it be your responsibility to investigate it or would you delegate that?
A. In most cases, I would investigate it.
Klugh deposition at 100–101.

17. The Counseling Review report details the reasons for Ms. Walsh's counseling as follows:

> Continued issues of poor management practices after verbal discussion on 7/11/97 and statements on previous evaluations. These are specifically related to David Evans. The specific issues are speaking to subordinates regarding Dave, ie. in counting room (I'll have to figure out what to do with Dave) & in service area (Dave had better get that phone, as well as sets ups)—mentioning to an employee that you wait and see if Dave noticed an overage of Geoffrey money in the safe.
Plaintiff's Exhibit 13.

18. Plaintiff's Exhibit 18.

19. Plaintiff's Exhibit 19.

20. Plaintiff's Exhibit 20 at 5, 7.

21. *Id.* at 9.

On October 23, 1998, Plaintiff Evans filed a formal written charge with the Ohio Civil Rights Commission/EEOC.[22] In the charge, Evans claims discrimination because of his race and disability.[23]

Plaintiff Evans now sues Toys R Us for race discrimination, retaliation, and violation of Ohio public policy. In making these claims, Plaintiff Evans says Toys R Us failed to promote him despite his proclaimed readiness for a higher-level management position. Evans contends that Defendants has not promoted him because of his race.

Evans says he has received unwarranted criticism about his job performance and that this treatment is racially motivated. Evans suggests evidence of this in his written job performance evaluations. To this end, Plaintiff Evans suggests that Defendant Toys R Us has engaged in a pattern of discriminatory conduct that has stopped his opportunity for promotion.

## II. Issues

In deciding the instant motions, the Court considers the following issues: (1) whether Plaintiff Evans' claims for failure to promote and retaliation under Ohio Rev.Code § 4112 and 42 U.S.C. § 1981, are barred by the applicable statute of limitations; (2) whether Plaintiff Evans gives evidence sufficient to raise a claim of discrimination because of his race; (3) whether Plaintiff Evans gives evidence sufficient to support his claims for unlawful retaliation; and (4) whether Plaintiff Evans can maintain his claim for violation of Ohio public policy. The Court first addresses Defendants Toys R Us' arguments that Plaintiff Evans' clams are stopped by the applicable statute of limitations.

## III. Statute of Limitations

In its motion for summary judgment, Defendants Toys R Us say that Plaintiff Evans' claims for failure to promote and retaliation under Ohio Rev.Code § 4112 et seq. and 42 U.S.C. § 1981 are barred by the applicable statute of limitations. Defendants argue that Evans' state law claims under § 4112.02(A) are subject to the two-year statute of limitations period set forth in Ohio Rev.Code § 4112.99, as amended by House Bill 350, effective January 27, 1997.[24] Defendants next argue that Evans' federal claims under 42 U.S.C. § 1981 likewise are stopped by a two-year limitations period. Here, Defendants say Evans' § 1981 claims are barred to the extent these claims arose before June 4, 1996, two years before June 4, 1998—the date Evans filed the instant action in federal court.

In response, Plaintiff Evans says that his state claims under Ohio Rev.Code § 4122 et

---

**22.** Defendant's Exhibits 19 (OCRC "Charge of Discrimination") and 21 (OCRC "Notice of Right to Judicial Review").

**23.** The OCRC/EEOC charge states:

> I. I am African–American who has (Degenerative Disk) back problems. I have also been denied several promotions, the latest being on October 11, 1996, to an Assistant Store Director. I am now holding the job title of Manager.
>
> II. Debbie Walsh, Assistant Store Director, (Caucasian, Female), has not given me reason as to why I have not been promoted other than job performance.
>
> III. I believe I have been unlawfully discriminated against due to my race and disability for the following reasons:
>
> A) Since my employment with the company, I have worked out well on the job.
>
> B) My doctor has placed me on light duty, however occasionally I am asked to do things by my employer that my doctor has requested me not to do on the job.
>
> C) The company doesn't have a posting for promotions. The way I have been finding out about an employee being promoted is through the company news letters. No reason is ever given as to why I am not considered for a promotion to Assistant Store Manager.
>
> D) I feel I am being overlooked for promotions because of my race and disability. Defendant's Exhibit 19.

**24.** Ohio Rev.Code § 4112.99 provides:

> Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief. A civil action commenced pursuant to this section shall be brought within two years after the alleged unlawful discriminatory practice occurred. The period of limitation specified in this section for purposes of a civil action authorized by this section does not affect any other period of limitation that is specified in another section of this chapter for purposes of a distinct civil action authorized by that other section, including, but not limited to, a civil action authorized by division (N) of section 4112.02, division (D) of section 4112.021, division (A) of section 4112.051, or division (B) of section 4112.14 of the Revised Code.

seq. are governed by the six-year statute of limitation for discrimination claims as set forth in *Cosgrove v. Williamsburg of Cincinnati Management Co.*, 70 Ohio St.3d 281, 638 N.E.2d 991(1994). Evans further defends that his claims under 42 U.S.C. §§ 1981 and 1981(a), though subject to a two-year statute of limitations, are saved by the "continuing violation doctrine." [25]

Upon review, the Court finds that Plaintiff Evans' claims for race discrimination under 42 U.S.C. § 1981 and, alternatively, Ohio Rev.Code §§ 4112.02(A) and 4112.99, are stopped to the extent Plaintiff Evans' race discrimination claims fall outside the statutory period commencing two years before the filing of this action. See Ohio Rev.Code § 4112.99, as amended by House Bill 350, effective January 27, 1997.

█ It is settled law that actions arising under 42 U.S.C. § 1981 borrow the statute of limitations period for personal injury suits of the forum state. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).[26] In Ohio, the statute of limitations period for personal injury is two-years. Ohio Rev.Code § 2305.10. See also *Gates v. Precision Post Co.*, 74 Ohio St.3d 439, 659 N.E.2d 1241 (1996). Therefore, this Court applies the two-year of statute of limitations to Plaintiff Evans federal § 1981 discrimination claims.

Although Plaintiff Evans acknowledges the two-year limitation period, he argues that in the Sixth Circuit, the limitation period is tolled in instances of a "continuing violation." Here, Evans says that Defendants Toys R Us engaged in a continuing pattern of discrimination such to make any discriminatory act occurring outside the two-year period actionable.[27] Although the Sixth Circuit does recognize the "continuing violation doctrine," this Court finds the doctrine inapplicable to this case.

The Sixth Circuit described the "continuing violations doctrine" in *Gandy v. Sullivan*

County, Tenn., 24 F.3d 861 (6th Cir.1994). The court wrote:

> The doctrine of continuing violations is a judicially-created one which has been used in two ways: It may provide a court with "jurisdiction" over a cause of action which was filed after the limitations period had run on a discrete discriminatory act triggering the statute. The doctrine also may allow a court to impose liability on an employer for acts committed outside the limitations period.

*Id.* at 864. The *Gandy* court further described categories of "continuing wrongs." It said:

> "Continuing" wrongs have been described in four categories relative to limitations of actions:
>
> (1) the period limiting actions to recover for all harm may commence upon the occurrence of the first invasion of the plaintiff's rights; (2) each continuation or repetition of the wrongful conduct may be regarded as a separate cause of action for which suit must be brought within the period beginning with its occurrence; (3) the period for all harm may not commence until the defendant ceases his wrongful conduct; and (4) the period for all harm may be postponed until there is a manifestation of compensable harm.

*Id.* (quoting Developments in the Law, Statutes of Limitations, 63 Harv. L.Rev. 1177, 1205 (1950)). See also *EEOC v. Penton Ind. Pub. Co.*, 851 F.2d 835, 838 (6th Cir.1988) (stating that to invoke continuing violation, party must show more than single isolated incident or otherwise demonstrate some " 'overarching policy of discrimination' which might constitute a 'continuing violation.' ") (citation omitted).

Other Circuits likewise require at least one identifiable discrete discriminatory act to trigger a continuing violation. In *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, (11th Cir.1993), the Eleventh Circuit stated:

---

Ohio Rev.Code § 4112.99.

**25.** Plaintiff's Memorandum in Opposition to Summary Judgment at 14.

**26.** *See also Lane v. Ogden Enter., Inc.*, 13 F.Supp.2d 1261, 1270 (M.D.Ala.1998) (stating

limitation period in § 1981 action borrows state period for personal injury claims).

**27.** Plaintiff's Memorandum in Opposition to Summary Judgment at 14 (citing *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 837–38 (6th Cir. 1998)).

"In determining whether a discriminatory employment practice constitutes a continuing violation, this Circuit distinguishes between 'the present consequence of a one time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does.'" *Id.* at 448 (quoting *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992) (citations omitted)). See also *Lane*, 13 F.Supp.2d at 1270 (same) (citing *Knight v. Columbus, Ga.*, 19 F.3d 579, 580–81 (11th Cir.1994), *cert. denied*, 513 U.S. 929, 115 S.Ct. 318, 130 L.Ed.2d 280 (1994)).

■ Applying these standards to the instant case, this Court finds that Plaintiff Evans fails to give facts sufficient to show a continuing violation. First, Plaintiff Evans claims a general pattern of discriminatory conduct beginning sometime in 1995. Evans says this conduct in some manner, although not specified, has caused him not to be promoted. He claims this is because of his race.

However, Evans does not sufficiently identify a single occasion where Defendants Toys R Us, either directly or discretely, discriminated against him because of his race. Further, Plaintiff Evans does not detail a specific time where he applied for a promotion or sought to fill a higher-level job vacancy.[28] Even if he did apply for such a vacancy, Plaintiff Evans fails to give specific evidence of how or when Toys R Us either denied him a promotion, or indicated that it would not consider Evans' for a promotion.

Instead, Plaintiff Evans posits that he was entitled to a promotion solely on the basis of his job performance reviews and management evaluations. In short, Evans suggests that because his job performance consistently met company expectations, he was entitled to a promotion. However, such a suggestion is not sufficient to show a continuing violation. Absent evidence of a triggering event (e.g. evidence that Evans applied for a promotion) or evidence that Defendants Toys R Us somehow engaged in a discrete act that could trigger a continuing pattern of discriminatory conduct, Plaintiff Evans cannot raise the "continuing violation doctrine" to circumvent the two-year statute of limitation for § 1981 claims.

For the reasons above, the Court finds that Plaintiff Evans' claims for race discrimination under 42 U.S.C. § 1981, and alternatively Ohio Rev.Code § 4112 et seq., are barred to the extent these claims seek relief for discriminatory conduct arising two-years prior to the date he filed this action, that being June 4, 1998.

Without a claim for a continuing violation, Plaintiff Evans is left to pursue only those claims which properly arise within the two-year statute of limitations. Accordingly, the Court turns to whether Plaintiff Evans gives sufficient evidence of discrimination to survive Defendants Toys R Us' motion for summary judgment.

### IV. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, ––– U.S. –––, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain*

---

**28.** Although Plaintiff Evans' OCRC charge states he was denied a promotion to Assistant Store Director near October 11, 1996, the record is void of any evidence showing a vacancy for this position, that Evans' applied or expressed interest in applying for such a position, or that Defendant Toys R Us denied promoting Evans to such a position.

*County Bd. of Elections,* 141 F.3d 252 (6th Cir.1998).

The Sixth Circuit emphasized the showing required to defeat summary judgment, in *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992). There, the Court stated:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict . . . ." The "mere possibility" of a factual dispute is not enough. Rather, in order to defeat summary judgment a plaintiff "must come forward with more persuasive evidence to support [his or her] claim than would otherwise be necessary." Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted.

*Id.* at 581–81 (citations omitted). Thus, a judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question.

### V. Discussion

Plaintiff Evans sues Defendants Toys R Us for failing to promote him. In doing so, Evans says his employment with the company has been the subject of racially improper and derogatory acts, including his receipt of an allegedly discriminatory card from co-employees and graffiti, racial slurs and having toilet paper placed on his car while it was parked at work.[29] Plaintiff Evans further

says that despite his complaints and reports of these incidents to management, the company has failed or neglected to take remedial action to investigate of correct the situation.

Evans also points to the conduct of his immediate supervisor, Ms. Debbie Walsh, as evidence of discriminatory treatment. He says that Walsh's disdain for minorities and men constitutes unlawful racial discrimination and has caused him not to be promoted. The Court considers the facts of this case in the light most favorable to Plaintiff Evans.

In construing the evidence in the light most favorable to Plaintiff Evans', this Court analyzes Plaintiff Evans' race discrimination claims based on 42 U.S.C. § 1981 and Ohio Rev Code. § 4112 et seq. and applies the same substantive analysis as is used in Title VII cases.

In the Sixth Circuit, it is well-settled that claims arising under "both § 1981 and Title VII carry the same standards of proof." *Harvis v. Roadway Express, Inc.,* 923 F.2d 59, 61 (6th Cir.1991). See also *Blackstone v. Daughtry,* 19 F.3d 1432 (TABLE), 1994 WL 58995, *3 (6th Cir.1994); *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63, 69 (6th Cir.1985); *Henderson v. Corrections Corp. of America,* 918 F.Supp. 204, 210–11 (E.D.Tenn. 1996). Similarly, for claims arising under Ohio Rev.Code § 4112.02, courts use the same standard employed when reviewing of cases under Title VII or 42 U.S.C. § 1981.[30] *Barker v. Scovill, Inc., Schrader Bellows Div.,* 6 Ohio St.3d 146, 451 N.E.2d 807 (1983). Accordingly, this Court will simultaneously review Plaintiff Evans' state and federal discrimination claims arising from Defendants Toys R Us' alleged failure to promote him because of his race.

---

**29.** *See* Evans' deposition at 63–71. Evans in unable to recall any specific details about who sent or signed the card, and he could not recall details about the slurs or graffiti placed on his car. Rather, Evans recalls only that these occurrences were generally offensive.

**30.** In *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n,* 66 Ohio St.2d 192, 421 N.E.2d 128 (1981), the Court held:

> Ohio uses the same test. In previous cases, however, we have determined that federal case

law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.,* 44 Ohio St.2d 178, 339 N.E.2d 658 (1975); *Weiner v. Cuyahoga Community College District* (1969), 19 Ohio St.2d 35, 249 N.E.2d 907, cert: denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970).

*Id.* at 196, 421 N.E.2d 128.

## A. Race discrimination

■ Section 1981 plaintiffs may prove their race discrimination claims in one of two ways: either a plaintiff can produce "direct evidence" of discrimination, or a plaintiff can give "circumstantial evidence" of discrimination. If a plaintiff "shows direct evidence that, if believed by a jury, would be sufficient to win at trial," summary judgment is inappropriate. *Lane v. Ogden Enter., Inc.*, 13 F.Supp.2d 1261, 1274 (N.D.Ala.1998).[31]

However, a plaintiff will not necessarily lose on summary judgment because she fails to give direct evidence. Instead, a plaintiff can pursue their claim by showing "circumstantial evidence" of discrimination. *Id.* at 1275. If a § 1981 plaintiff shows circumstantial evidence of discrimination, the court employs the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny.

After reviewing the record, the Court finds no "direct evidence" of racial discrimination or of a retaliatory environment. Having no direct evidence of discrimination, Plaintiff Evans must make the showing described in *McDonnell Douglas.*

The plaintiff's initial burden in a race discrimination case is to establish "a *prima facie* case of . . . discrimination" by a preponderance of the evidence. *McDonnell–Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. See also *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 n. 3, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The *McDonnell Douglas* framework consists of three stages. At the first stage, the plaintiff must establish a *prima facie* case

that the employer discriminated against him. Second, the employer can produce evidence of a legitimate, nondiscriminatory reason for its action. Lastly, the plaintiff attempts to discredit the employer by proving that the employer's reason was a pretext for discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d at 342.

■ In disparate treatment cases, a plaintiff can make a *prima facie* claim of discrimination by showing that the defendant treated a similarly-situated non-protected person differently. To specifically make out a *prima facie* case of race discrimination based on a failure to promote, plaintiff must show that his performance during the period in question was demonstrably better than "comparable" non-minority employees with similar background and experience levels. A plaintiff needs to show that the persons he is being compared with were in a very similar situation. The *Mitchell* court describes the "similarly-situated" requirement as follows:

> As the Sixth Circuit has frequently phrased the requirements of a prima facie claim of disparate treatment using such a "comparable non-protected person was treated better" element as one of the requisites, the plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees. . . .
>
> . . .
>
> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "compara-

---

31. In *Lane,* the district court gives examples of direct evidence in race discrimination cases. It states:

> Direct evidence is evidence that, if believed, proves the existence of discrimination "without inference or presumption." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir.1998). Such evidence must truly be focused on the employment action at issue. Not only must it be evidence of discriminatory "actions or statements of an employer," but the actions or statements at issue must "[correlate] to the discrimination or retaliation complained of by the employee." *Id.* Further, the statements "must be made by a person involved in the challenged decision," *Trotter v.*

*Board of Trustees of Univ. of Alabama*, 91 F.3d 1449, 1453–54 (11th Cir.1996), and must not be subject to varying reasonable interpretations, *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189–90 (11th Cir.1997). Examples of direct evidence would consist of a statement by a "plant manager that he wouldn't hire blacks because 'half of them weren't worth a s[* * *],'" *id.* (discussing *Miles v. M.N.C. Corp.*, 750 F.2d 867, 876 (11th Cir.1985)), or a "production manager's statements to [a] black employee that 'you people can't do a _____ thing right," *Carter*, 132 F.3d at 641 (discussing *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 923 (11th Cir.1990)). *Id.* at 1274.

bles" are similarly-situated in all respects. Thus, to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* at 582–83 (citations omitted).

■ In establishing the *prima facie* case, a plaintiff also must show sufficient evidence of a "causal connection" between plaintiff's race, the plaintiff's job evaluation, and the denial of a promotion. *Samson–Smith v. Rice,* No. 92–3055, 1993 WL 30496, at * 3 (6th Cir.1993) (per curiam) (identifying elements of discrimination and retaliation claims).

Should plaintiff make this *prima facie* showing, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), quoting *McDonnell–Douglas, supra* at 802, 93 S.Ct. 1817. See also *St. Mary's Honor Center,* 509 U.S. at 510 n. 3, 113 S.Ct. 2742. If the defendant succeeds in carrying its burden of production, which involves no credibility assessment, the *McDonnell Douglas* framework is no longer relevant, and the presumption raised by the *prima facie* case drops from the case. *St. Mary's Honor Center, supra* at 510, 113 S.Ct. 2742 "The plaintiff then has 'the full and fair opportunity to demonstrate,' through presentation of his own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' ... and that [race] was." *St. Mary's Honor Center, supra* at 508, 113 S.Ct. 2742 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089).

■ "[A]reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center,* 509 U.S. at 512 n. 4, 113 S.Ct. 2742. "It is not enough, in other words, to disbelieve the employer; the fact-finder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 519, 113 S.Ct. 2742. In this regard, the plaintiff retains the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff[.]" *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089; *St. Mary's Honor Center,* 509 U.S. at 507, 113 S.Ct. 2742; *Haynes v. Miller,* 669 F.2d 1125, 1126–27 (6th Cir.1982).

■ Further, an employer may make employment decisions "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). Even if the court were to disagree with defendant's reasons for its actions or believe that defendant was unnecessarily harsh toward plaintiff, this would not be enough; an affirmative finding of discrimination must be made. See *id.* (finding no discrimination even if plaintiff was fired for violating a rule he did not violate.). See also *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1083 (6th Cir.1994); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 16 (1st Cir.1994), *cert. denied,* 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995); *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988).

In *Manzer,* the Sixth Circuit construed the respective pretext burdens and emphasized that a factfinder may not reject an employer's proffered explanation "unless there is sufficient basis in the evidence for doing so. To allow the jury to simply refuse to believe the employer's explanation would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant, which we must not permit." *Id.* at 1083 (emphasis added).

The *Manzer* court outlined three ways to establish a case on the credibility of the employers explanation by demonstrating by a preponderance of the evidence (1) that the proffered reasons had no bases in fact; (2) that the proffered reasons did not actually motivate the adverse action, or (3) that the proffered reasons were insufficient to motivate the adverse action. *Id.* at 1084. It is important to note that the *Manzer* court

gave credit to the employer's proffered reasons for terminating the plaintiff absent other sufficient evidence that Manzer was not fired for "just cause." The court observed:

> The issue is not whether Manzer was truly 'obnoxious' enough, or 'unreliable' enough, to justify firing him. Nor are we concerned with why Diamond Shamrock retained Manzer as long as it did. Those are precisely the type of 'just cause' arguments which must not be allowed to creep into an employment discrimination law suit. Diamond Shamrock asserts that these are the reasons Manzer was fired and, in the absence of one of the three showings discussed above, its explanations must be accepted.

*Id.* at 1085.[32]

Accordingly, in order to prevail once a defendant has given a legitimate, nondiscriminatory reason for its adverse action, a plaintiff must prove both that the reason was false and that discrimination was the real reason. *St. Mary's Honor Center,* 509 U.S. at 507–08, 113 S.Ct. 2742.

▮ The § 1981 plaintiff always maintains the burden of persuasion. This is so because the plaintiff maintains the burden of showing that the employer intentionally discriminated against the plaintiff. If the defendant proffers a reason for its action, the burden of production then shifts back to the plaintiff, who must persuade the trier of fact that the employer's articulated reason is a "pretext." *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 342 (6th Cir.1997).

Hence, even if Evans shows all other elements of a *prima facie* case, he must further give evidence that Defendants Toys R Us' reasons for not promoting him are pretextual. Evans must show that Toys R Us' reasons have no basis in fact, that the reasons did not in fact motivate the adverse action or,

if they were factors in the defendant's decision, that they were jointly insufficient to motivate the adverse action. *Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir.1995) (citing *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 266 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987)).

In the instant case, Plaintiff Evans argues that his mid-year management review, dated November 15, 1996, is evidence of racial animus by his immediate supervisor, Ms. Debbie Walsh, and therefore evidence against Defendants Toys R Us. Evans suggests that his November 15, 1996 review was the first evaluation that drastically downgraded Evans' performance ratings from "meets expectation" to "below expectation" in certain areas. Evans says that this is inconsistent with his overall historical job performance ratings for the period 1990 through 1996. Plaintiff Evans says this is evidence that Ms. Walsh discriminated against him because of his race.

▮ Upon review of the record, the Court concludes that Plaintiff Evans fails to show evidence sufficient to make a claim for racial discrimination under Ohio Rev.Code § 4112.02 or 42 U.S.C. § 1981 (Counts III and IV of the complaint). Specifically, Evans fails to give any evidence that he was treated any differently than similarly-situated persons. Evans also does not give evidence that Defendants Toys R Us have adopted a discriminatory policy of promoting employees on the basis of race.

First, Plaintiff Evans fails to give sufficient evidence that he was treated differently from other non-minority employees -minority employees holding equivalent positions and who also were supervised by Ms. Walsh. To satisfy his burden under *Mitchell,* Plaintiff Ev-

---

**32.** *See also Greer v. Sears, Roebuck & Co.,* 54 F.3d 776, 1995 WL 283778 (6th Cir.1995) (pretext not shown by attack on legitimate factual basis for termination; plaintiff must show, for example, others not discharged for similar acts), *cert. denied,* 516 U.S. 1053, 116 S.Ct. 723, 133 L.Ed.2d 675 (1996); *Tragler v. Rondy Inc.,* 45 F.3d 431, 1994 WL 709285 (6th Cir.1994) (stating that "[c]onclusory assertions are not sufficient to allow a nonmovant to withstand a motion for summary judgment.... disputation of facts underlying defendant's legitimate reason is not sufficient

to carry plaintiff's burden"); *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 804–05 (6th Cir.1994) (stating a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason); *Galbraith v. Northern Telecom, Inc.,* 944 F.2d 275, 282–83 (6th Cir.1991) (finding of pretext does not mandate finding of illegal discrimination), *cert. denied,* 503 U.S. 945, 112 S.Ct. 1497, 117 L.Ed.2d 637 (1992).

ans proffers the performance evaluations of several other Toys R Us employees, including Mary Najuch (a store manager), David English (a storeroom manager), Rob Vincent (a front-end manager), Amy Urbank (a store manager), Rich Gueli (a store manager), and John Kopera (a store manager).[33] Although these employees appear to serve in positions comparable to that held by Plaintiff Evans, Evans fails to show whether these employees are were subject to the same standards or dealt with the same supervisor; factors required under *Mitchell* .

A review of these employees evaluations shows that they were not supervised by Ms. Walsh. Further, there no is evidence that these employees either (1) had experience and skills comparable to Evans, (2) were indeed promoted to a higher level-position, (3) were promoted over Evans, or (4) if promoted, were willing to relocate to a different store. Absent such evidence, Plaintiff Evans fails to satisfy the similarly-situated requirement of *Mitchell.* Further, the record shows that Evans cannot identify specific employees who may have received a promotion over him.[34]

Plaintiff Evans's *prima facie* case fails for other reasons. For instance, Evans is unable to identify any Toys R Us stores having vacancies suitable for his possible promotion.[35] As related, Evans does not give evidence that he in fact applied for a position at a particular store and was denied a promotion. Nor does Evans show evidence that he would necessarily be willing to relocate to receive a promotion.[36]

Rather, the Plaintiff Evans shows facts that his supervisor, Ms. Walsh, may have disdain for minorities and men, generally. Here, Evans makes general claims that other employees confronted him and inquired about Walsh's poor treatment of him. In his November 15, 1996 letter to Ms. Klugh, Evans states:

> In the recent past I have been contacted by Toys R Us employees about the treatment Ms. Walsh has bestowed upon me. They have indicated to me that Ms. Walsh has a great disdain for minorities and men in particular. These comments have caused me great concern since I did not solicit them.[37]

However, these statements are not supported by witness affidavits or deposition testimony. In his deposition, Evans recounts discussions with former Toys R Us employees. He describes a conversation with former employee, John Dover. Evans testifies:

Q. Did you ask him [John Dover] any questions that might relate to this lawsuit?

A. Yes, I did.

Q. Do you recall what those were?

A. If he ever was made aware or was aware of any derogatory comments or remarks regarding African–Americans, if he was aware of any specifics regarding myself, and that was it.

Q. what his response to you for the first question . . .

A. He told me that there were meetings, store director meetings that he had attended where there were jokes, disparaging comments, remarks that were made by various store directors

. . . .

\*      \*      \*      \*      \*      \*

Q. You also asked Mr. Dover if there were any comments about you in particular?

---

**33.** *See* Plaintiff's Exhibits 22—27, respectively.

**34.** Evans' deposition at 109 ("I cannot recall within the last year, nor even going years back, the exact specific names of individuals that have been promoted over me, but I do know that there have been some that have been promoted over me.")

**35.** Evans' deposition at 111–117.

**36.** *Id.* at 114–116. *See also* Defendants' Exhibit 15 (Management Survey of Employees). In a survey completed by Plaintiff Evans for Toys R

Us (at location 9203), Evans indicated he was unwillingness to relocate. Section 4 of the survey asks employees if they are willing to locate through the United States or Internationally. The section asks the employee to rate their willingness to relocate as follows: "For promotion only," "For lateral or promotion" or "Not willing to relocate." Plaintiff Evans answered he was "not willing to relocate" either in the U.S. or internationally. In Section 6 of the survey. Plaintiff Evans also indicated a "0%" willingness to travel.

**37.** Plaintiff's Exhibit 12 at 2.

A. Yes.

Q. What did he respond to that question?

A. None that he was aware of.[38]

Plaintiff Evans also apparently had conversations with Mr. Chris Elias and Mr Eric Steffle. However, like Dover, these former employees have not presented deposition or affidavit testimony. Absent such evidence, Plaintiff Evans' testimony alone does not show admissible evidence to support plaintiff's claims against Defendants Toys R Us.

Evans also says there is evidence that Toys R Us' management was aware that Ms Walsh had disdain for minorities and men and knew that Walsh treated Plaintiff Evans differently. Evans says that management failed to investigate or correct the situation. Here, Evans shows a letter dated November 16, 1996, he wrote to Human Resource Manager, Ms. Linda Klugh, complaining of the difficulties he was having Ms. Walsh. Evans also gives evidence that Human Resource Manager Klugh, in an e-mail dated November 29, 1996, informed other Toys-R Us management about the Davis/Walsh situation.[39] As earlier described, Plaintiff Evans says this e-mail clearly shows that Toys R Us management was aware that Assistant Store Manager Debbie Walsh was discriminating against Evans.[40]

Evans gives the following language from the Klugh's e-mail to then District Manager Scott Pounced: "... In this letter he [Evans] makes some pretty strong accusations.... I will be sitting down with him on Friday for specific examples of his accusations. I also want to eliminate the line of thinking that he is being harassed because Debbie does not like minorities or men and that this is a result of his car accident." [41]

Evans suggests the following language from Klugh's e-mail to Pounced is particularly incriminating:

"This [contents Debbie Walsh's mid-year review] could put us in a sticky situation because we are documenting that Debbie does not treat the managers well. The only thing we will be able to focus on here is that Debbie treats everyone like that, not just minorities and men." [42]

Upon review of the record, including the above excerpts, the Court concludes this evidence is insufficient to establish a causal connection between Toys R Us' alleged refusal to promote Plaintiff Evans and his race. Instead, these materials document deficiencies in Ms. Walsh's management skills. This is especially true in light of Ms. Klugh's memorandum to Mr. Richard Cudrin. It says in part:

You can see that the Director has concerns about her [Debbie Walsh's] people skills. I know that this may hurt us since it backs up some of Dave's complaints. The only help that this could be it that it appears Debbie treats all of the managers the same way. There are white managers there as well as black. The evaluation points out that she does not develop any managers, not just Dave.[43]

Plaintiff Evans says that other Toys R U.S. employees made comments to him about Ms. Walsh's disdain for minorities and poor treatment of Evans. However, Evans fails to give evidence of such comments or incidents. Human Resource Manager Klugh similarly does not recall ever being told by Evans or others that "race" was an issue. In her deposition, Klugh states:

Q. So there were no notes kept of your investigation into David's complaints?

A. There was nothing to investigate. I mean, his complaints, any specific fact he gave me had nothing to do with racial motivation. His complaints about Debbie were concerns that other people in the store had as well. So I looked into it as a management issue, not a racial issue.

Q. Well, didn't David tell you that other store employees had told him that

---

38. Evans deposition at 14–17.

39. Plaintiff's Exhibit 18 (e-mail).

40. Plaintiff's Exhibit 19 (letter from Linda Klugh to Richard Cudrin regarding Evans/E.E.O complaint).

41. Plaintiff's Exhibit 18.

42. *Id.*

43. Plaintiff's Exhibit 19.

Debbie Walsh was a racist and didn't like blacks?

A.  I don't recall him saying that.

Klugh deposition at 100–101.

Absent evidence that other comparable employees were treated differently, the Court concludes that Plaintiff Evans fails sufficient evidence such that a jury could find that Toys R Us failed to promote Plaintiff Evans because of his race. Accordingly, Defendants Toys R Us are entitled to summary judgment on Plaintiff Evans federal and state race discrimination claims under Counts I and II of the complaint.

### B.  Retaliation

Defendants Toys R Us next say they are entitled to judgment on Plaintiff Evans' claims for retaliation under Counts III and IV of the complaint.. In deciding this, the Court considers Plaintiff Evans' pending motion to voluntarily dismiss these claims without prejudice [Doc. 222]. The Court also notes Defendants Toy R Us' objection to dismissing these claims *without prejudice* as opposed to dismissal *with prejudice.*

■ To make out a *prima facie* case of retaliation under Title VII, § 1981, or for that matter Ohio Rev.Code. § 4112, it must be shown: (1) that plaintiff engaged in a protected activity; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Williams v. Nashville Network,* 132 F.3d 1123 (6th Cir.1997) (citing *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir.1997); *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987), *cert. denied,* 484 U.S. 1067, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988).[44]

The *prima facie* case may be rebutted through the introduction of legitimate, non-discriminatory reasons for the adverse action, in which case the burden of proof lies with the plaintiff to establish by a preponderance of the evidence that the proffered reasons are pretextual. See, e.g., *Jackson v. Pepsi–Cola,* 783 F.2d 50, 54 (6th Cir.), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986). Again, however, the plaintiff bears the ultimate burden of persuasion.

In the instant case, Defendant Toys R Us says it should be given judgment *with prejudice* on plaintiff's retaliation claims because Plaintiff Evans cannot establish a *prima facie* case of retaliation. Plaintiff Evans concedes that at this stage of the proceedings, the evidence does not support his claims for retaliation. However, Evans wishes to voluntarily dismiss his claims *without prejudice.*

■ Upon review of the record, and having considering the above requirements needed to make a claim for retaliation, the Court concludes that, at present, the record lacks sufficient facts to determine whether Plaintiff Evans could establish a claim for unlawful retaliation. Absent such facts, the Court cannot fully evaluate the sufficiency of the evidence for purposes of summary judgment.

Accordingly, the Court grants Plaintiff Evans' motion to dismiss the retaliation claims against Defendants Toys R Us (Counts III and IV) *without prejudice.*

### C.  Public policy

Defendants Toys R Us lastly contend that they are entitled to judgment on Plaintiff Evans' claim for violation of public policy under Ohio law (Count V). Defendants Toys R Us argue this claim fails because Evans cannot show that Toys R Us engaged in conduct that violated Evans' civil rights. The Court agrees.

The evolving law of public policy torts in Ohio was most recently clarified by the Ohio Supreme Court in *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997). There, the court held that an employee discharged for

---

44.  In *Wrenn,* the Sixth Circuit used the following four prong test to decide a claim for retaliation: (1) that plaintiff engaged in an activity protected by Title VII; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Id.* at 500.

filing a complaint with OSHA may maintain a separate tort action for violation of public policy despite the fact that the plaintiff failed to comply with the Ohio Whistleblower Act. *Id.* at 162, 677 N.E.2d 308. See also *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St.3d 228, 233–34, 551 N.E.2d 981 (1990) (stating that "the time has come for Ohio to join the great number of states which recognize a policy exception to the employment-at-will doctrine.").

In this case, Plaintiff Evans urges this Court to follow recent district court decisions that appear to have expanded the scope of tort remedies available in cases making claim for wrongful discharge and age discrimination. Plaintiff Evans cites to *Rogers v. A.K. Steel Corp.*, No. C–1–96–987, (S.D. Ohio April 16, 1998) (Beckwith, J.), and *Schutte v. United Dairy Farmers, Inc.*, No. C–1–97–850, slip op. at 2–7 (S.D.Ohio March 17, 1998) (Spiegel, J.). Both decisions discuss the leading case authority in Ohio on this issue; *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997), and *Livingston v. Hillside Rehab. Hospital.*, 79 Ohio St.3d 249, 680 N.E.2d 1220 (1997), *reversing*, No. 97T–5360, 1997 WL 51413 (Ohio App. 11th Dist. Jan. 24, 1997).

In *Rogers and Schutte,* the district courts interpreted the Ohio Supreme Court's 1997 reversal in *Livingston* to mean that a plaintiff making claims for wrongful discharge because of age or gender can permissibly bring independent tort claims for violation of public policy, despite the existence of a statutory remedy. In *Rogers,* the court found that "a public policy claim for wrongful discharge for age discrimination does exist in Ohio and that the Plaintiff could not have asserted such a claim prior to *Livingston.*" *Id.* at 8.

The court reached a similar conclusion in *Schutte.* There, the court stated: "Clearly, the Livingston decision allows an employee, like Ms. Schutte, who is discharged or disciplined in violation of O.R.C. § 4112.02, to maintain a statutory claim for the violation, a common-law cause of action in tort, or both." *Id.* at 8.

Although Defendants Toys R Us concede that a tort claim for wrongful discharge in violation policy has been recognized, they maintain this tort has not been extended to claims for retaliation or failure to promote. Toys R Us argues alternatively that even if the tort was so extended, Evans' public policy claim fails if his underlying discrimination claim fails. The Court agrees.

A review of relevant case law shows that the public policy tort has not been extended to claims for failure to promote or retaliation. Nor has it been extended to claims for sexual harassment. See *Bell v. Cuyahoga Community College*, No. 73245, 1998 WL 474179, *3 (Ohio App. 8th Dist. Aug. 13, 1998).[45] Both *Rogers* and *Schutte* above arise in the context of wrongful termination or discharge claims. See also *Smith v. Glaxo Wellcome, Inc.*, No. C–1–96–540, slip op. at 2 (S.D. Ohio June 11, 1998) (Dlott, J) (recognizing public policy claim for wrongful discharge based on age and sex discrimination).

Because this Court refuses to expand Ohio law to include a failure to promote as an actionable underlying claim for tortious violation of public policy, the Court grants Toys R Us' motion for judgment on Plaintiff Evans' violation of public policy claim. Accordingly, Defendants Toys R Us are entitled to summary judgment on Count V of the complaint.

## VI. Conclusion

The Court finds that Plaintiff Evans fails to establish a *prima facie* case for race discrimination under 42 U.S.C. § 1981 (Count I), or alternatively, under Ohio Rev.Code § 4112 et seq. (Count II). Further, because the record at this time lacks sufficient evidence to support a claim for unlawful retaliation, the Court grants Plaintiff Evans' motion to dismiss Counts III and IV of the complaint with prejudice.[46] Lastly, the Court

45. In *Bell,* the court stated:

In the instant case, appellant is not claiming that she was discharged or disciplined in violation of public policy. Instead, appellant argues, in effect, that she was harassed in violation of public policy. Neither *Greeley* nor its progeny have recognized a tort for harassment in violation of public policy. Likewise, this court refused to expand *Greeley* to create a cause of action for harassment in violation of public policy.
*Id.* at *4.

46. Although the Court acknowledges Defendants Toys R Us' objection to dismissing these claims

finds that Plaintiff Evans' fails to give sufficient evidence to make a claim for violation of public policy under Ohio law.

Accordingly, the Court grants Defendants Toys R Us' motion for summary judgment on Counts I, II, and V of the complaint. The Court grants Plaintiff Evans' motion to dismiss Counts III and IV of the complaint without prejudice.

IT IS SO ORDERED.

with prejudice, absent additional evidence, the Court is unable to fully determine the viability of these claims.